Good morning. May it please the Court, my name is Teresa Traber, and I represent the Plaintiffs and Appellants in this action. I'd like to reserve five minutes of my time as rebuttal. Many issues have been raised in this appeal, but I'd like to focus first on the District Court's serious error in instructing the jury on the plaintiff's Nigerian battery claims. The Court ruled early on that Nigerian law applied to all of the tort claims for injuries that occurred on the barge and the platform as compared to those that occurred on land, and that issue is not contested or challenged by anyone here. In August of 2007, more than a year before the trial, after substantial briefing and based on copious declarations from the experts by both parties, the Court ruled that set forth the standards for battery, as we correctly set forth the standards for battery in an order that was issued in August of 2007. On the eve of trial, however, the Court jettisoned those standards and instead took Chevron's burden to prove that the force used was justified and reasonable and transformed that affirmative defense into an element of plaintiff's claim and then further held that that element had to be... Exactly when did that happen? It happened right on the eve of trial, Your Honor. And is it explained or... It is not explained, Your Honor. The jury instructions and the arguments in favor and against were approximately 300 pages long. They were all issued together. All of these arguments were set forth by the Court. The Court issued her draft jury instructions and then further final instructions without indicating why she reversed herself. So that this was in the final instructions. It was. Okay. Yes. Yes, Your Honor. This is really critical because the – it was virtually undisputed at trial that Chevron's security forces shot, beat and tortured the plaintiffs. The issue in the case, the only serious issue with regard to the battery case situation, was whether or not the use of lethal force was justified and whether the level of force used was reasonable. So in this case we have, for example, Larry Buoto running towards the armed security guards with his hands raised saying we are peaceful protesters, don't shoot. That was when he was shot. We have Eralika Erawaranu who was shot, according to the autopsy report, on the side. We have Bassay J.J. who was shot and beaten as he was retreating from the barge to the platform. And we have Bola Oyebo who was beaten, horse whipped and eventually tortured and hung by his wrists by a ceiling fan after he was in detention. So the issue of the level of force and whether or not it was justified was central to this case. Well, help me a little. I'm just, there are a lot of issues in this case, and I'm not sure that I understand how the error in the final instruction was presented to the district court so that the district court, we can see why the district court did what it did. The error was presented in two. If you're asking how we raised our objections, the jury instructions were presented to the district court with an instruction by one side and argument by the parties following it immediately on why that instruction should be adopted or not adopted. And then following that would be an alternative instruction by the other side and the same kind of arguments. There are voluminous documents, most of which, relating to these, have been submitted to the court here. And then immediately before the instructions occurred, we raised again with the court that the burden of imposing the burden of proving unreasonable force on the plaintiffs was an error under the instruction, and the court did not comment except to say that she was going to provide that instruction. Well, where is the instruction that you provided that was correct? The instruction that we provided that I think was correct. Where in the record is it? It follows immediately after our argument. Our argument with regard to why the instruction that they submitted was incorrect is that the record at 4315 through 16, and immediately following that, I don't have the exact, it's volume 21, tab 36 at the end of that, 4315 through 16 is our argument about what should have been instructed. And there, and we will find the specific instruction that we submitted as well. We also, we raised this objection with the court immediately before she instructed, and you'll find that at 3042 through 3043 in the record. Now, it's absolutely clear that this is the law under Nigerian law, and if you go through the court's order from August of 2007, she cites to all the statutory and case law that applies to this. Under Nigerian law, it is absolutely clear, and Chevron's expert said this, and the court said in its order that it was undisputed at that time, that a battery is simply an intentional application of force, and that self-defense, the use of reasonable force in connection with a riot or an assault or defensive property or others are all affirmative defenses. That's set forth under the criminal code. It's set forth in statutes. It's set forth in case law that's cited. The evidence code makes clear that any exception to a charge that is made, whether in criminal or civil context, is an affirmative defense that must be proven by the parties. That's evidence code, or I believe they call it an act, the Nigerian Evidence Act 138-1. What is the Nigerian law on this point? Excuse me? What is the Nigerian law? What case do you rely on? What statute? The statutes that we rely on are, the cases and statutes are set forth in the court's order of August of 2007, but the statute that set, the cases that set forth the standard for these being affirmative defenses are the Okonkwo, the state case which says that these are, that aiding and self-defense, aiding and defense of a dwelling of a house and use of reasonable force are statutory defenses. The Nigerian Evidence Act 141-1 sets forth that these are affirmative defenses, and the criminal code, the criminal act sets forth, first of all, that a battery or an assault is an intentional application of force, and then sets forth after that a series of affirmative defenses that are exceptions to that basic offense. Are those affirmative defenses to a criminal action? Pardon me? Are those affirmative defenses to a criminal action? Yes, and they've also been applied in a civil context, and that is set forth in the Declaration of Chevron's Expert, Mr. Babalakan, and in various case citations in that context. And in, under criminal, under Nigerian law, it is said that if an element of a claim or a defense sets forth a crime, then that particular element must be proven beyond a reasonable doubt, whether it's in a civil or in a criminal context. So as the Court held in August of 2007, to the extent that the plaintiffs are proving an assault, an intentional application of force, they have to prove that beyond a reasonable doubt. Similarly, as the Court held, to the extent the defendants are proving that they used reasonable force in connection with quelling a riot, with dealing with resistance, with an attack, which is essentially the, either a riot or an individual attack, was essentially the defense that was set forth at trial, that they have to then prove that that attack, that that crime that they were responding to occurred beyond a reasonable doubt. And that's what the Court held in 2007, and that's what the law is under the statutes in Nigeria. Unfortunately, the Court got it right in 2007, and then got it wrong when she instructed the jury in 2008. And this was a major error that deprived the plaintiffs of the fair trial that they should have had under the battery claims under Nigerian law. Thank you. Our proposed battery instruction is that, is in the excerpts of record at 4304, excuse me, 4305, volume 21. Did you read it? Tab 36. Pardon me? Can you read the relevant part? Do you have it? Yes. First of all, the instruction sets forth, as opposed to the fourth element in the instruction that was given, that rather than having to prove beyond a reasonable doubt that there was unreasonable force applied and that that was a substantial factor in causing harm to the plaintiffs, our instruction says that the Nigerian security forces touching or use of force was a substantial factor. And it goes on to say, the Nigerian security forces may use reasonable force to arrest or detain a person when they have reasonable cause to believe that person has committed a crime. The defendants bear the burden to prove beyond a reasonable doubt that the Nigerian security forces had reasonable cause to believe a plaintiff had committed a crime and that the force used was reasonable. Even if the security forces were mistaken in believing a crime had been committed, a person being arrested or detained has a duty not to use force to resist arrest unless the Nigerian security forces were using unreasonable force. Okay. And then it goes on. Okay. Your Honor, we also argue that the instruction with regard to the California battery claims was an error because under California law, there is an exception to the kind of standard wherein a battery is an application of an intentional application of force and all of unreasonable force or the use of reasonable force, excuse me, self-defense, et cetera, are affirmative defenses. And that only applies in the exigent circumstance where a police officer is seeking to arrest someone or detain someone who is either being arrested or is fleeing. The situation that applies to this case is Mr. Bula Oyibu who was already in detention and he was beaten and tortured. So there's no evidence in the record at all that he was resisting or that he was being arrested at the time that he was beaten on the land where the California claims applied. So there's no basis for applying this exception. It is clear under California law that the exception only applies in those exigent circumstances and that that was the purpose of the courts recognizing that exception. Secondly, it only applies to a police officer acting within the scope of his or her duties. And it was a key issue at trial as to whether or not these individuals were agents of the defendants. And wasn't that the major disputed issue? It was. In the trial in which you lost? It was a major issue, a disputed issue at trial, which the court found on summary judgment and in the jury instruction should have been submitted to the jury for decision. And then in this jury instruction she decided against us on it. By applying this exception and this standard, which required us to prove unreasonable force, she essentially found in this context that there was, that they were in fact police officers acting within the scope of their duties. And I should just say, Your Honor, that the way the jury instructions, defendants have argued in their briefing that there was a finding against us on what has been referred to as secondary liability, whether or not CNL, the Chevron Nigerian subsidiary, was responsible for the acts of the government security forces and whether or not the American corporations were responsible for CNL's actions. But those were never there. It's very, given the errors that have been raised here in this appeal, it's very unclear that any of those issues were reached, because if you look at the jury instructions on the underlying claims, at the end of each one the court said for the battery claim. At the end of the battery claim it says, if you find that the Nigerian security committed battery, you will have to decide whether one or more of the defendants are liable under any of the theories of liability presented in this case, as those theories will be explained later in these instructions. Given that, and in light of the errors that we've raised with regard to the instructions and evidence as it relates to these claims, it seems to me that there can't be, it's very unlikely that the jury ever got to any of the secondary or tertiary liability issues. But rather, found against us on the case. Kagan. Okay. So that your, the thrust of your argument with all of these separate evidentiary and instructional claims is essentially that the district court took away from the jury the question of whether or not they were a police force or not? Yes. Is that what? Okay. What do you think is the next? Okay. And with respect to the last instructional error that we raised, there, the court Before you get into that, Ms. Traber, let me ask you a question. Yes. Isn't the key issue here whether ATS and the law of nations applies or DOSA applies? That is an issue that we have raised. That does not interfere with our ability or affect our ability to bring the underlying common law claims that I've just discussed. But with respect to the pretrial order in which the court found that DOSA preempted or prevented the ATS Act from claims from being brought, yes, that is an issue here. And don't all of these issues turn somewhat on the availability of the law of Nigeria under the Nations ATS Act? No, Your Honor. The availability of Nigerian law was a choice of law decision that was raised in a motion by Chevron, and they urged that Nigerian law should apply to the torts as opposed to the ATS claims. And that became law of the case, and that hasn't been challenged by either side on this appeal. The ATS claims are different, and they are federal statutory claims that allow jurisdiction in federal courts for asserting violations of international human rights standards. And they draw from the common law for their remedies, et cetera, but they are essentially enforcement of international laws in a federal context by way of a statute. So there's no question in your mind that the judge allowed the ATS law to have effect? No. On the contrary, the judge found that the ATS claims that interfered with the – that conflicted with the wrongful death claims under Nigerian law or – excuse me, I'm And our argument is that – and that was only with regard to one plaintiff. One plaintiff, because only one plaintiff died. That's correct. I'd like to stop you there and ask just about the two arguments you made about jury instructions along the same line. If we were to agree with you on the Nigerian battery claims, does the whole thing have to go back for retrial? Your Honor, that applies. That would – if the ruling were that narrow, then the – what would go back for jury related to their injuries and the one death, the wrongful death claim on the barge. And if we were to agree with you on your California battery, does that only go back as to the plaintiff Oyimbo? Yes. He's the only one who had those claims, because he was the only one who was injured on land. May I reserve the balance of my time? You may. Thank you. May it please the Court. The plaintiffs have indeed raised a number of challenges to this verdict. I think they have correctly not focused here on the evidentiary challenges. The trial court had ample discretion under Rule 403 with respect to those rulings. This is a very experienced trial judge who was intimately familiar with this case, having presided over it for nine years. So let me focus then first on the instructional errors, alleged instructional errors to which plaintiff's counsel has focused her attention. She argues that the Nigeria battery instruction was incorrect because she claims that Nigeria law puts the burden on the plaintiff in any circumstance. In fact, in the trial court, plaintiff's position was that Nigeria law matches California law on this point. And at page 4306 of the excerpts of record to which plaintiff's counsel was referring, for their instruction, their source for that is the California model jury instruction, CASI 1305. This is at 4306 of the excerpts of record. So their position, and at the summary judgment stage, their position was California law and Nigeria law are the same on this, and therefore the judge should default to California law and apply the California standard. And California, like the Federal courts under Section 1983 and numerous other jurisdictions, puts the burden on the plaintiff to prove in a case of alleged excessive force by a police officer to prove that the force was indeed excessive. So now on appeal, what they're claiming, they're backtracking. Assuming it's a police officer. True. And so her point this morning is that was the central issue in the case, which the judge didn't allow us to present to the jury. In fact, they never asked. Their argument now is the jury should have been instructed. You must find that these Nigeria Navy and police officers were acting as law enforcement officials and then make a finding on that. They never asked the court to submit that issue to the jury. They took the position with the court that the court should decide it as a matter of law. And what they relied on in the district court for that argument were cases, U.S. cases, in which an off-duty police officer acting as essentially a night watchman or a private security guard was found not to be acting in law enforcement capacity. Under Nigeria law, we cited the statutes to the district court that establish that the Navy and the Army officers who, particularly with respect to offshore oil platforms, which is what was at issue here, act as law enforcement officers under Nigeria law. They were the duly constituted police force, in essence, to respond to this kind of an unlawful invasion of an offshore private oil facility. So first, they didn't ask the court to submit this to the jury, this question of whether they were police officers or not. And second, the law clearly is against them, either as a matter of California law and certainly as a matter of Nigeria law. And indeed, it was plaintiffs themselves who asked for and got an instruction, this is at ER page 26, that the Nigeria security forces are considered public officials. And they needed that instruction in order to support or try to support their claim under the Alien Tort Statute, which requires that they be acting in a public capacity. So this argument that they were deprived of the opportunity to argue that the Nigeria law enforcement authorities were in fact not Nigeria law enforcement authorities is both waived and unfounded. Now, she points to the various Nigeria statutes. She points to the declaration of our expert. Those Nigeria statutes to which she's referring mirror the California statutes that the California Court of Appeal in the Edson case, which all parties agree is the governing authority, relied upon to rule that the burden is on the plaintiff in these types of excessive force cases. And the rationale, the policy factors to which the Edson court looked apply in spades in a case like this. Their argument is, well, maybe it applies before the individuals are taken into custody. But once they're in custody, then the burden shifts back to the police officers to justify their actions. In fact, in the Edson case at page 1263, at 63 Cal at 4th, the court referred both to making an arrest and detention. And a police officer's right to use force extends not simply while the arrest is being made, but also to ensure the safety of the police officers themselves, of the other persons in custody, and of the defendant himself, to ensure their safety. And there's a right to use force. Now, of course, that right is not unlimited. And if the plaintiff were able to show that just as in the case of an arrest where there was no resistance to arrest, then the force would be excessive. In the case of custody, if there's no threat posed, if there's no resistance being offered up, then there would be no occasion for force. But the burden rests on the plaintiff in that circumstance. But, well, the plaintiff here today cited to this case has a certain whir of pages aspect to it. So the plaintiffs this morning cited to the August 2007 order of Judge Eelston, which they say is, she got it right. And then that did not jibe with what was actually later instructed. Now, could you clarify what you understand to have been in the August 2007 order and how it related to what was eventually instructed? The August 2007 order grew out of the summary judgment motions that were filed. And their position is that the defendants took the position that we had the burden in this case to prove that the force used was not excessive. In fact, if you read our summary judgment motion, this is docket number 1353 in the district court record. At page 13, what we argued is that the summary judgment should be granted in our favor because the plaintiffs had not discharged their burden to show that the force used here was excessive. So the point of our motion, now, Your Honor's question is, well, what did the judge say? Yeah. So in her order, she did make references to self-defense, for example, being a defense on which the defendants would have the burden. And the case that counsel cited this morning, the Nigeria case, the Okawono case, I believe it was, is a self-defense case. But law enforcement authorities are not limited to self-defense. They have a right to use force even if it's not in self-defense. And that's what the Edson case and all these other cases that we're citing involved. So when we get to trial, before trial, she says it was on the eve of trial. So the judge said in the order what? The judge denied our motion for summary judgment on the ground that there was sufficient evidence to go to the jury on the question whether there was excessive force. That was really the only thing that that order actually decided. With the burden being on who to do what? In the course of the order at various times, she did state that the burden would be on the defense with respect to things like self-defense. But when we get to the jury instruction stage, counsel says this was on the eve of trial. In fact, it was about a month before trial where we had a jury instruction conference. There were lengthy, as she points out, there were lengthy briefs submitted. And the Court, I think correctly, looked to what was given her at that point. And what they relied on was California law, which, as we've shown, puts the burden on the plaintiffs. What we relied on were the Nigeria statutes that clearly lay out and mirror the California rules with respect to the right and the privilege of police officers to use force. And just as in California, just as in Section 1983 in the federal courts, Nigeria law recognizes that right and, therefore, the burden is on the plaintiff in these cases. And we cited the Okorume case, which involved an evidence statute with respect to the standard of proof that has to be shown. And they say, well, that only involves the standard, not who has the burden. But in that case, the Court recognized that in civil cases, the burden should be the same because Nigeria, as a matter of policy, does not want somebody who is acquitted of the crime to then be potentially liable and tort. So it matches the standards. Now, what they rely upon now on appeal is this English law case, the Ashley case. And they say, well, that governs in Nigeria. She didn't mention that this morning. I think for good reason. English law is not binding in Nigeria. The Nigeria courts have repeatedly disagreed with English law, where the Nigeria courts have a different policy. I think the Okorume case illustrates that there is such a different policy here. And furthermore, they never invoked English law in the trial court. They never cited this case. But it's more than just simply failing to cite a case. It's they didn't invoke the law, and they didn't give the judge an opportunity to consider it. Again, though, even if they had, she would have been clearly correct in rejecting that. Well, what is your understanding, your position with respect to Nigerian law? Our position is that Nigeria law, like California, which they said Nigeria matches, like California law, like the federal law under Section 1983, and like the law of numerous other jurisdictions, puts the burden on the plaintiff in an excessive force case by police officers to prove that the force used was indeed excessive, and that the jury was therefore properly instructed on what that burden was, and that there was no error. Now, with respect to California law in particular, they say that this was the critical issue. The alleged torture on land, in fact, the issue there was whether it occurred at all, and whether C&L had anything to do with it. There was no issue, really, with respect to the reasonableness of the force on land. So as to that part of it, it's just simply not an issue. But with respect to out on the barge, even there, the Plaintiff's Counsel argues that the evidence was undisputed, that these shootings were unjustified. But in fact, the eyewitnesses testified that the persons who were shot were advancing on the military at the time they were shot. And as for Mr. Bawota's testimony, he admitted he was advancing on the military. He claimed he was asking them not to shoot, but the jury was entitled to disbelieve that testimony. Mr. Bawota was impeached on numerous occasions, and the story he told the jury was entitled to reject is incredible. And indeed, that's what the district court ruled when she denied the plaintiff's motion for a new trial. Related to all of this is their assertion that the jury should have been instructed on self-defense, and that the law puts the burden on the defendant in the case of self-defense. But this, again, is a police officer case, and police officers aren't limited to self-defense. And they can't claim to be prejudiced by the fact that the court did not instruct the jury on an additional defense that might have been available to us, namely self-defense. What the court instructed on was the actual defense that we were asserting, which was the use of reasonable force. Let me turn to the two claims to which Judge Panner mentioned, the ATS and the TVPA claims that they claim were improperly dismissed before trial. There's two reasons that argument should be rejected. The first is that these are wrongful death claims of the E.R. Warren and family members. Under the ATS, they wanted to assert a summary execution claim under the TVPA and extrajudicial killing claim, but both are wrongful death claims. And they were allowed to assert a wrongful death claim to the jury under Nigeria common law, and the jury rejected that claim. Now they say, but the standards are different. But with respect to the negligence theory of wrongful death, there was no pertinent difference in the standards. The jury was instructed that a wrongful death occurs when someone does something that a reasonable person would not do. And certainly, a killing, even if it were shown to be unjustified and intentional, would be something that a reasonable person would not do. So the first point on these two claims that were dismissed before trial is that just as in the Tennyson case that we cite in our brief, the issue was not presented to this Court. But even if the issue were properly before the Court and there were a need to decide it under the facts of this case, their arguments are simply unfounded. With respect to the DOSA preemption of the ATS claim, this Court, the Supreme Court, have repeatedly recognized that DOSA provides the exclusive remedy for deaths on the high seas. And there's no dispute here that this was a death on the high seas. So their argument is, yes, but the ATS provides a cause of action for that. In fact, as the Supreme Court recognized in SOSA, the ATS is a jurisdictional grant, and acted on the understanding that the common law would provide the cause of action. What if you had a case of piracy? Does DOSA preempt the piracy claim as well? If it were a death on the high seas, yes, I believe it would, Your Honor. Even though piracy was recognized at the time that the ATS was adopted? The ATS has an express savings clause in it that preserves certain claims, including the claims under the law of a foreign country. But it doesn't preserve any claims under international law. And this is a – the Supreme Court has emphasized that DOSA was enacted to provide a uniform and predictable remedy. And the Supreme Court has consistently struck down, whether it's federal common law, whether it's state statutory law, has struck down causes of action and holding those to be preempted. Right. So DOSA is the exclusive remedy for death on the high seas. And that, you say, would preempt any reliance on a federal common law, which at most is what you would have under the ATS. Yes. That's exactly our position, Your Honor. Let me then turn to the TVPA claim. Again, the Court need not consider this or reach this issue for the same reason I just described. The TVPA claim is a wrongful death claim. And the jury considered and rejected a wrongful death claim. But if it were presented, the district court was clearly correct in holding that when Congress used the word individual and says that individuals who subject other individuals to torture or killing may be held liable, that that individual means a natural person and not a corporation. The Supreme Court, this Court, numerous courts have held that the common and ordinary meaning of individual is a natural person and not corporations. And we know that's true in this case because Congress used the word individual both to refer to the perpetrator and to the victim. And we know that a victim cannot be a corporation. A victim of corporations can't be tortured. We also have the analogy of Section 1983, which the TVPA provision is modeled after Section 1983. Section 1983 uses the word person. Any person who subjects or causes to be subjected to a violation of rights of another person may be held liable. It's telling that in the TVPA, Congress departed from that. Although the statute is otherwise modeled on Section 1983, Congress departed from it in the critical aspect of limiting liability only to individuals. And that makes sense in this context because what Congress was doing was it codifying what it understood to be the international law and decided that the Phil Ortega case. And Phil Ortega was a case against an individual, an Argentine police officer. And so now plaintiffs here say in order to make TVPA match up to international law, you have to construe it as covering corporations because the ATS cases have held that corporations may be held liable under the ATS. In fact, this court has not resolved that issue. The Second Circuit, which is one of the circuits they cite, similarly has not resolved that issue. It expressly reserved it in the Presbyterian Church case. It recently asked for briefing on that issue in another case. They cite the Eleventh Circuit, but the Eleventh Circuit didn't analyze the issue. It doesn't appear that it was even raised. But even if courts now in 2010 were to resolve that issue that corporations could be held liable in certain circumstances under the ATS, the TVPA was enacted in 1992, and at that time there was no conception, and the issue hadn't been litigated. And in fact, the ATS, as the court is aware, was dormant for most of its history. In my last two minutes, let me just comment briefly on the evidentiary points. As I say, I think plaintiffs have not focused on that this morning for good reason. Their story at trial, that they did nothing but, after sending threatening letters, threatening sea piracy and a mass riot, that then what they did is do nothing but sing and pray and hang out for three days on this dangerous offshore oil platform for three days, that claim put at issue all of the evidence that they now challenge on appeal. And furthermore, to bolster that claim, they asserted that they acted as a group. In their brief, they chastised the district court for allowing in evidence regarding other people, they say. In fact, they were the same people, because these plaintiffs repeatedly associated themselves with a group that they claimed was peaceful, that they claimed was peace-loving, that they testified would never engage in hostage-taking to advance the interests of the Aladji people, that they claimed this group was unarmed, and that there was no cause for the barge workers to have any fear, and therefore the CNL overreacted when it asked the Nigerian law enforcement authorities to intervene and rescue the workers who'd been held for three days. So on each item of evidence, the plaintiffs themselves put at issue by their own assertions and made that evidence admissible. Now, they raised various arguments on appeal that the, you know, that the, when the tug was taken, for example, that that was unconnected with the barge. The evidence was undisputed that it was the same people. But, excuse me, you don't have very much time left, and I still, I, just speaking for myself, remain a little bit troubled as to how, as to the chronology on the battery claim, as to just how we got to what was instructed from that August 2007 order. You say that the 2007 order was a denial of your motion for summary judgment on the question of whether there was unreasonable force? That's correct, Your Honor. And the district court there essentially said that, what, there was a tribal issue or that the burden was on you to prove that the force was reasonable? Well, that there was a tribal issue, Your Honor. Now, plaintiff's counsel is going to get up and say that, no, in fact, what she held was that the burden was on us. And it's true. If you read that order, you will see assertions to that effect. That's what it says. Yeah. But then what happened, to play out the chronology, Your Honor, is that in the months before trial, the parties submitted lengthy submissions to the court laying out the law and specifically addressing the burden. So you're saying if you trace all those through, we get to what was essentially given and there wasn't anything that was contrary to it that was offered? Well, if you trace it through, that what you see is that at the summary judgment stage, we were arguing the reasonable doubt standard, which the court adopted and they don't challenge on appeal, and saying that they didn't have any evidence to show that this was excessive force. And the court denied that motion. Now, when we went and in the expert declarations and the other things to which they cite, this question of the burden of proof, aside from whether it was the reasonable doubt or not, was not directly addressed. Yeah. And then when in the court summary judgment order, sure, there were statements about defenses and, you know, which side had the burden. But it was not until we got to the jury instruction stage, three, as she points out, there were lengthy briefs submitted on this. And at that stage, we specifically focused on it. The plaintiffs focused on it. The defense focused on it. Cited the relevant statutes and the relevant cases on the defense side we did. As I mentioned, the plaintiffs at that point were saying just follow California law. Okay. So there was no intermediary ruling. You all agree with that.  Thank you. The denial of summary judgment and then the jury instructions. One final point on that, Your Honor. They say it was on the eve of trial to suggest maybe that this was sprung on them by surprise. It was well before trial. That's okay. We understand that. Thank you. You have used your time. Thank you, Your Honor. We'll give you an extra minute or two, if you want. Okay. Thank you, Your Honor. I would direct the Court's attention to page 43, excuse me, 4273, which is a page from Defendant's Moving Papers on the Summary Judgment Motion. I'm sorry. It's 42. 4273 of the Moving Papers of the Defendant's Summary Judgment Motion on these claims and look specifically at the section called defenses, in which they go through all the defenses that they claim based on their expert's declaration, their expert's declaration being at 4108 through 4268. And they specifically say that self-defense, quelling a riot, use of reasonable force, et cetera, are defenses. What they were arguing in their summary judgment is even though they're defenses, we should get summary judgment on them because there's no issue of fact. And the Court said they are your burden under Nigerian Evidence Act 138-1. You have to prove them beyond a reasonable doubt. There's no question here that summary judgment should not be granted in your favor and against plaintiffs on that. It is not true, and I can't read it all to you with the time I have, but it is not true that we urge California law. On the contrary, we urge that the Court rule on the jury instructions consistent with what it had ruled on the summary judgment motion. We argue judicial estoppel with regard to their arguments in their briefs and their expert declaration. And I can't tell you why Judge Ilston ruled differently the second time than she did the first time, but I can tell you why defendants argued differently. It's because they – the judge accepted their standard of beyond a reasonable doubt and then applied it to them. Yes. But see, I still don't – you're not helping me with where that ruling came. Your Honor, there is no ruling. There is – we simply have to trace through what was offered and what – on both sides. Yes. Your Honor, you know, I was at the jury instruction conference. Judge Ilston did not say anything. She did not want argument. She felt that the briefing was so extensive that argument would be overkill. I think she believed the briefing itself was overkill. The Ashley case, we didn't invoke English law. Their expert and our expert agreed that English law, common law, is a basis for Nigerian law unless it's rejected by Nigerian statute or case law. It is Nigerian law. There is no case that, other than Ashley, that is a part of Nigerian body of law that has specifically considered this late-raised exception to Nigerian battery standards, and in that case they considered the argument the defendants raised and rejected it. On the – I would urge you to look at our citations in our briefing. There's no question here, despite the defendants' argument today, that they specifically argued self-defense and that they argued riot and that they put in evidence of the Chevron security forces having to shoot in order to save themselves and others. There was no instruction on that. That was argued. We urge there be an instruction. There was no instruction. Edson, under California law, specifically says that the exception standard applies where you are effectuating an arrest or a detention, not where somebody is in detention and subject to your control. I urge you to look at that case. The fact that police officers are public officials with respect to the ATS claims does not mean, just as under 1983 law, someone can be an official acting in a capacity in cahoots with a private entity. Here the agency argument was properly asserted to the – or given to the court – excuse me, given to the jury to decide. There was substantial evidence that the government security forces were in fact the agents of Chevron Nigeria Limited, that they fed, clothed, paid for them, transported them, and that on the day of the incident they decided the timing of when they would go in. We do understand that. We have allowed you to use time equivalent to your adversary, so I think that we should cut it off unless there are further questions.  Is my time up? It's going the wrong way. Yeah. You're two minutes – almost three minutes into the red. All right. Thank you. Thank you. Thank you. The Court appreciates the arguments just presented, and the case is ordered submitted on the briefs.
judges: Panner, Schroeder, Bybee